UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

DNA MEDICAL TECHNOLOGIES, INC., )
                                                      )
    Plaintiff,                   )
                                                     ) Civil Action No. 5:10-191-JMH
v.                                                   )
                                                     )
PACIFIC STOCK TRANSFER CO.,      ) **MEMORANDUM OPINION AND ORDER**
                                                     )
    Defendant.                  )

                      **     **     **     **     **

This matter is before the Court upon the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion for Transfer of Venue pursuant to Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1404 [DE 4]. Plaintiff has filed a Response [DE 6], stating its objections, and Defendant has filed a Reply [DE 7] in further support of its Motion. Accordingly, this motion is ripe for decision.

**I.   Capacity to Sue**

The capacity of a party to sue or be sued is "the personal right of a party to come into court" and a procedural question typically controlled by court rules, although its resolution depends on a reading of state substantive law. *In re Murray*, 199 B.R. 165, 170 (Bkrtcy. M.D. Tenn. 1996) (citing *Johnson v. Helicopter & Airplane Services Corp.,* 404 F.Supp. 726, 729 (D. Md. 1975); *Virginia Electric & Power Co. v. Westinghouse Electric Corp.,* 485 F.2d 78, 83 (4th Cir. 1973); *Du Vaul v. Miller,* 13

F.R.D. 197, 198 (W.D. Mo. 1952); 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1559 at 441 (2d ed. 1990); Black's Law Dictionary 207 (6th ed. 1990) (Rule 17's provisions regarding real party in interest are purely procedural)). "Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). As a procedural matter, Fed. R. Civ. P. 17 fully circumscribes the capacity of parties in matters before this Court, providing that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Thus, the question placed squarely before this Court is *which* state substantive law it should consider when determining whether Plaintiff has the right to come before this court.

Defendant would have this Court dismiss the suit, citing KRS § 271B.15-020(1).[1] The Kentucky statute does not govern this matter, however, as Plaintiff was not organized under the law of

---

[1] KRS § 271B.15-020(1), upon which Defendants rely, provides that "a foreign company transacting business in this state without a certificate of authority shall not maintain a proceeding in any court in this state until it obtains a certificate of authority." This statute was repealed by the Kentucky legislature, effective, January 1, 2011. *See* 2010 Ky. Acts ch. 151, sec. 151. However, under the legislation that became effective at that time, a foreign entity is still forbidden to transact business in the Commonwealth or maintain proceedings in the courts of the Commonwealth until it obtains a certificate of authority from the Secretary of State. *See* 2010 Ky. Acts ch. 151, §§ 40-41.

the Commonwealth of Kentucky.[2]  Rather, adhering to Fed. R. Civ. P.17, this Court looks to the law of Utah, the state in which DNA Medical Technologies, Inc., was organized.  Defendant does not argue that Plaintiff lacks capacity to sue under Utah law. Accordingly, its motion will be denied in this regard.

**II.  Personal Jurisdiction**

Defendant next argues that this Court does not have personal jurisdiction over them and that the case must be dismissed.  For the reasons which follow, the Court agrees.

**A.   Standard of Review**

Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).  In this instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of

---

[2]  To the extent that Defendants wished to avail themselves of the "benefit"of KRS § 271B.15-020(1), they might have raised this issue while the matter remained pending in the Fayette Circuit Court.  Instead, they removed the case to this Court and, thus, subjected the matter to the federal procedural rules.

the party seeking dismissal." *Id.* at 1459. Bearing this standard of review in mind, the Court concludes that Plaintiff has failed to make a prima facie showing that personal jurisdiction exists.

**B.   Background**

Plaintiff is a publicly traded Utah Corporation whose principal place of business is currently in Kentucky. Defendant is a Nevada Corporation which does business throughout the United States but has its principal place of business in Virginia.

According to Plaintiff's Complaint, Defendant's predecessor-in-interest, Florida Atlantic Stock Transfer (hereinafter, "Florida Atlantic"), made an agreement with Plaintiff at some unidentified point in the past. Under that agreement, Florida Atlantic was to provide stock transfer agent services for Plaintiff.[3] In January 2003, however, the corporate status of Plaintiff expired within the State of Utah because the corporation was abandoned by its officers and directors, preventing shares from being publically traded and rendering them valueless.

From a time prior to January 2003 through April 27, 2007, Florida Atlantic continued to act as the transfer agent for Plaintiff. As of April 27, 2007, Florida Atlantic either resigned

---

[3] Plaintiff describes the stock transfer agent as "the holder or 'warehouser' of all of the shareholder lists, all stock certificate numbers, and other vital records" for the corporation. There is no information in the record of this matter about how or where the agreement between Plaintiff and Florida Atlantic for those services was negotiated, finalized, or carried out.

as transfer agent and sold the debt owed by Plaintiff or assigned its contract with Plaintiff to Defendant.

Time passed, and a shareholder petitioned a court to appoint a custodian, which relief was granted in April 2009. A new board of directors was constituted by that custodian, a principal place of business was established in Kentucky, and the corporation was made current in the State of Utah so that its shares could be traded publically and a merger transacted with a viable corporation, in order that its shares would have value for its shareholders.

Since April 2009, Plaintiff's new board of directors has attempted to obtain a shareholder list from Defendant, which Plaintiff describes as "essential for the viability of the corporation." Without it, Plaintiff avers cannot notify its shareholders of meetings or actions, cannot produce records to which shareholders have a right, and cannot merge with another corporation. According to Plaintiff, Defendant has refused to produce the list on the grounds that Plaintiff owes Defendant for approximately $8,000 due for services provided from January 2003 through April 2007, during which time Plaintiff was abandoned and Florida Atlantic continued to serve transfer agent, as well as $10,800 for services that Florida Atlantic otherwise provided,

presumably prior to January 2003.[4]

Plaintiff's averments aside, Defendant has submitted evidence through its affiant, Christan Dobbins, that it does not transact business in Kentucky or contract to supply goods or services within the Commonwealth, nor does it regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth.[5]

**C. Analysis**

This Court may exercise personal jurisdiction over a defendant when two conditions are satisfied: (1) the exercise of personal jurisdiction must be authorized by the forum state's long-arm statute and (2) the exercise of personal jurisdiction must comport with constitutional due process. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 550 (6th Cir. 2007). In the Commonwealth of Kentucky, the extent of personal jurisdiction allowed by Kentucky's long-arm statute, KRS § 454.210(a), is

---

[4]Defendant's affiant, Christan Dobbins, declares that Plaintiff has incurred charges of $21,281.73 for services, which are now past due. [Motion to Dismiss, Exh. 2, Dobbins Decl. at ¶ 6.]

[5] While Defendant does not provide stock transfer agent services to Plaintiff, Defendant does provide those services for its customers as part of its regular course of business. Generally, Defendant's core transfer agent functions occur in Nevada, and Defendant's corporate decisions are made in Virginia. Further, the books, records, and documents concerning the transaction with Plaintiff are maintained in Virginia. [*Id*. at ¶¶ 3 and 4.]

coterminous with the extent allowed by due process, and the entire analysis is subsumed into the second prong of the personal jurisdiction inquiry. *See Cummings v. Pitman,* 239 S.W.3d 77, 84-85 (Ky. 2007). Thus, the Court considers whether the exercise of personal jurisdiction over Pacific would meet with the constitutional requirement of due process.

An exercise of personal jurisdiction comports with due process when three requirements are satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc.,* 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

Defendant argues that, while Plaintiff claims to have suffered a tortious injury in Kentucky, there is no allegation that Defendant caused the injury by an act or omission in the Commonwealth, nor is there any allegation that would rise to the level of a purposeful availment of the privilege of acting in the Commonwealth. Plaintiff contends that Defendant purposefully availed itself of the privilege of acting in or causing a consequence in the Commonwealth and that exercise of personal jurisdiction is appropriate because "Defendant represented the

-7-

Plaintiff company (as transfer agent), interacted with [Plaintiff] in Kentucky, spoke to an officer of the company of Kentucky by phone and through several emails, and has solicited offers to [Plaintiff] in Kentucky." [Resp. at 3.]

Further, Plaintiff states that Defendant sent several documents to Defendant, all bearing a Kentucky address, so "Defendant was well aware of Plaintiff having an office in Kentucky." Finally, Plaintiff argues that these contacts with Kentucky relate to Defendant's alleged work on behalf of Plaintiff and its management of Plaintiff's documents and are, as a result, substantially connected to and related to the "operative facts" of this controversy. Thus, concludes Plaintiff, Defendant "should reasonably anticipate[d] being haled into court" in Kentucky.

The gist of Plaintiff's argument is that Defendant purposefully availed itself of the privilege of acting in or causing a consequence in the Commonwealth when it knowingly sought to undertake the representation of a Kentucky client. However, Plaintiff misses the point. Defendant's predecessor-in-interest, Florida Atlantic, with whom Plaintiff had the contract for services never knowingly sought to undertake the representation of a Kentucky client as, to the Court's knowledge, Plaintiff did not have an office in Kentucky at that time. Similarly, when Defendant acquired its interest in the contract or debt owed under the contract between Plaintiff and Florida Atlantic, it could not have

knowingly acted in or caused a consequence in Kentucky because, to the best of the Court's knowledge, Plaintiff did not have an office in Kentucky at that time.

Plainly stated, there is no averment that Plaintiff's principal place of business was in Kentucky or that Plaintiff had any connection whatsoever with Kentucky in April 2007, at which time that Defendant obtained its interest in the debt owed by Plaintiff to Defendant's predecessor-in-interest and, the Court assumes, obtained Plaintiff's shareholder list. Through that time, it is clear that Defendant engaged in no overt action connecting it to Kentucky. Rather, it was only in 2009 that Plaintiff fortuitously moved its operations to Kentucky after any connection between Plaintiff and Defendant was forged.

Further, Defendant has not provided stock transfer agent services to Plaintiff and has no agreement to do so going forward. Rather, Plaintiff has rebuffed Defendant's advances. In other words, if the Court looks solely at the actualized relationship of the parties, there was never any reason for Defendant to expect to be haled into Court in the Commonwealth. The entire matter touches on a contract, even though it is a thing of the past, between Plaintiff, now with its principal place of business in Kentucky, and Florida Atlantic. The mere existence of a contract involving a forum resident does not confer personal jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). Further,

that contract did not contemplate the provision of services by Defendant's predecessor-in-interest or payment for those services by Plaintiff in or from Kentucky. Through April 2007, when Defendant succeeded Florida Atlantic in interest with respect to its role of creditor under the contract, Plaintiff had no presence in Kentucky of which the Court has been made aware.

Plaintiff argues, as well, that Defendant has withheld its shareholder list to Plaintiff's detriment while premising the return of Plaintiff's shareholder list, in part, on obtaining a contract with Plaintiff to provide transfer agent services for Plaintiff – all the while aware that Plaintiff is now located in Kentucky. The Court does not agree, however, that this "reaching out" to Plaintiff is the type of "deliberate undertaking" that demonstrates personal availment. A cause of action "arises from" a defendant's contacts with a forum state when the cause of action has a "substantial connection" to the defendant's forum state activities, i.e., "where a defendant's contacts with the forum state are related to the operative facts of the controversy." *Tharo Sys., Inc. V. Cab Produkttechnik GMBH & Co.*, 196 Fed. App'x 366, 371 (6th Cir. 2006). Plaintiff argues that Defendant's contacts with Kentucky relate to its predecessor's work on behalf of Plaintiff, i.e., the management of Plaintiff's documents, and the withholding of the documents by Defendant. Management of those documents did not occur in Kentucky, and the current location of

Plaintiff's documents is Virginia.

Ultimately, the Court agrees with Defendant that subjecting it, a nonresident defendant, to personal jurisdiction in Kentucky would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff has failed to make a *prima facie* showing that personal jurisdiction exists, and this Court shall dismiss this matter without prejudice. *Theunissen,* 935 F.2d at 1458.

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss [DE 4] is **GRANTED IN PART** and **DENIED IN PART**. This matter is dismissed without prejudice.

This 29th day of March, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge